Gants, Ralph D., J.
The plaintiff, Dr. Harriett Dann (“Dr. Dann”), and the defendants, Dr. James Patten *378 (“Dr. Patten”) and Dr. George Frangieh (“Dr. Frangieh”), are each board-certified ophthalmologists and equal shareholders in a closely-held professional corporation, Eye Care Specialists, P.C. (“ECS”). Dr. Dann has filed suit alleging that the defendants have breached their fiduciary obligations to her as a fellow shareholder, breached ESC’s by-laws and a stock redemption and employment agreement, and engaged in unfair and deceptive acts or practices in violation of Chapter 93A. She seeks relief both for herself and derivatively on behalf of ECS. Dr. Patten has moved for summary judgment, and Dr. Frangieh has joined in that motion.[1] After hearing and for the reasons stated below, the defendants’ motion for summary judgment is ALLOWED.

DISCUSSION

As this litigation has evolved, Dr. Dann now makes essentially three allegations. First, she contends that Drs. Patten and Frangieh breached their fiduciary duty to her when Dr. Patten nearly sold his shares in ECS to Dr. Frangieh in a manner that she contends would have violated either the ECS by-laws or the Stock Redemption Agreement. Dr. Dann is correct that Article VII, §6 of the ECS by-laws details the procedures that must be employed if one shareholder wishes to transfer his or her shares in ECS, requiring that, depending on the circumstances, the shares either be redeemed by ECS or that ECS have a right of first refusal. The Stock Redemption Agreement, dated April 1, 1998, establishes the purchase price if the shares are redeemed. Dr. Dann is also correct that in 2005, after initially offering his shares to both Dr. Dann and Dr. Frangieh, Dr. Patten informed Dr. Dann that Dr. Frangieh had offered to purchase his shares and entered into negotiations with Dr. Frangieh regarding the possible purchase. This Court need not determine whether Dr. Patten’s transfer of his shares to Dr. Frangieh violated either the ECS by-laws or the Stock Redemption Agreement because there is no dispute that Dr. Patten has yet to transfer his shares or enter into any binding agreement to do so. Therefore, Dr. Dann cannot prove any damages arising from the stock transfer, because it never happened.
Recognizing this inherent problem, Dr. Dann instead seeks injunctive relief, asking this Court to bar a future transfer. The fatal flaw in her argument is that the by-laws permit a shareholder to transfer his shares, provided the transfer complies with the procedures set forth in the by-laws, and there is no evidence that Dr. Patten and Dr. Frangieh have reached agreement on a transfer that will violate those by-laws. Consequently, the injunctive relief that Dr. Dann seeks is to bar a future transfer that would violate the by-laws, but she is not entitled to such relief in the absence of evidence that a violation has occurred or is imminent.
Second, Dr. Dann argues that Dr. Patten breached his contractual and fiduciary obligation to refer patients to her. There is evidence that Dr. Patten was so angered by a demand letter sent to him by Dr. Dann’s attorney that he ceased referring any patients to her, and that she suffered financial loss as a result. When asked, however, to identify the source of this contractual obligation, Dr. Dann can point only to the Employment Agreement that each of the three shareholders entered into with ECS, which provides that ECS “shall have . . . the right to allocate patients among its employees . . .” It is wholly unreasonable to contend that the right of a corporation to allocate patients among its employees includes an obligation of each physician employee to refer medical patients to other physician employees. There is no contractual obligation owed by any of the shareholder ophthalmologists to refer patients to each other. Nor will this Court include such an obligation among the fiduciary duties owed by physician shareholders to each other in professional corporations. The only obligation that should affect a physician’s referral of a patient to another physician is the obligation the physician owes to the patient.
Third, Dr. Dann contends that Dr. Patten breached his promise to provide ECS with an eight-year sublease for the premises that ECS currently occupies in the Guild Medical Building. In 2001, the Guild AB Limited Partnership (“the Limited Partnership”) entered into a fifteen-year Lease with Dr. Patten and his wife for these premises. Dr. Patten and his wife have rented the space to ECS as a tenant at will at the same annual rent that Dr. Patten and his wife must pay to the Limited Partnership. In the late summer of 2003, Dr. Patten’s arthritis had worsened to the point that he was no longer able to perform eye surgery, so on August 7, 2003 he asked Drs. Dann and Frangieh to cede additional office time to him to allow him to concentrate on his office-based clinical work. They did so, which required them to reduce their own clinical work, because the premises were not large enough to allow all three physicians to perform clinical work there at the same time. On August 22,2003, Dr. Patten wrote Drs. Frangieh and Dann an email proposing that their attorneys prepare a sub-lease between ECS and Dr. Patten and his wife that would grant ECS the right to remain in the premises for eight years. Dr. Dann contends that a sub-lease was drafted but never executed. Although no sub-lease was ever executed, she contends that the Court should find that ECS is entitled to this sub-lease because Drs. Dann and Frangieh relied upon this promise to their detriment by ceding him their office time.
This claim is nowhere found in Dr. Dann’s complaint, which alone is sufficient to require the grant of summary judgment. Even if it had been alleged in the complaint, it still would not survive summary judgment. The Statute of Frauds would bar enforcement of this alleged sublease, since there is no written contract signed by Dr. Patten or his wife. G.L.c. 259, §1. Dr. Dann’s promissory estoppel theory fares no *379 better because there is no evidence of any damages arising from the alleged breach of this promise. Dr. Dann does not contend that the promised sub-lease would have reduced ECS’s rent below what it pays as a tenant at will, and Dr. Patten has not terminated the tenancy at will. Since ECS remains in the premises paying the same rent it would have paid under the proposed sub-lease, neither ECS nor Dr. Dann has suffered any damage from the alleged breach. The mere possibility of future damages if Dr. Patten were to terminate the tenancy at will is insufficient to shield this claim from summary judgment.
Since these claims fail, Dr. Dann’s Chapter 93A claim must also fail. Even if Dr. Dann’s claims had substance, her Chapter 93A claim would still fail, because disputes among closely-held shareholders fall outside the rubric of Chapter 93A. See, e.g., First Enterprises, Ltd. v. Cooper, 425 Mass. 344 (1997).

ORDER

For the reasons stated above, the defendants’ motion for summary judgment is ALLOWED.

This Court allowed Dr. Frangieh to join because his argument for summary judgment is identical to that of Dr. Patten, and Dr. Dann can reasonably claim no prejudice from allowing him to piggy-back on Dr. Patten’s motion.